CITY OF GALVESTON et al. v. KENNER.

(Court of Civil Appeals of Texas. Galveston. Feb. 20, 1917. Rehearing Denied March 15, 1917.)

1. MANDAMUS ⬅➡154(2) — PETITION — SUFFICIENCY.

A petition by a landowner whose tenement was rented to different tenants to compel the municipality, which controlled the only waterworks system, to install separate meters and connections for the different tenants, is not subject to demurrer because it appeared that the building was furnished with water, and it was not shown that any of the tenants had applied for separate connections.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 297.]

2. WATERS AND WATER COURSES ⬅➡202—MUNICIPAL WATERWORKS—REGULATIONS.

A municipality which owns the only waterworks system in a city for supplying the inhab-

itants with water cannot adopt unreasonable regulations.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 276.]

3. WATERS AND WATER COURSES ⬅⟶202—MUNICIPAL WATERWORKS—REGULATIONS.

A municipality which controlled the only waterworks system in a city adopted a regulation providing that, if a house or building be occupied by several tenants, a water connection shall be made and water service furnished only upon the application of the owner, who shall pay for all the water furnished and supplied to such building, and in no case shall more than one service line and meter be installed in any one building. A property owner whose tenement was leased to different parties demanded that separate connections be furnished his tenants on the ground that the existing method prevented him from apportioning the cost between his tenants, or from depriving one tenant of water service without depriving the others; there being only one service pipe and meter. *Held*, that the regulation of the municipality was unreasonable and void, making a discrimination between lessors and lessees as to water service, and separate meters and connections should be furnished the several tenants.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 276.]

Appeal from District Court, Galveston County; Robt. G. Street, Judge.

Application by E. B. Kenner for a writ of mandamus against the City of Galveston and others. From a judgment granting the writ, defendants appeal. Affirmed.

Mart H. Royston and P. A. Drouilhet, both of Galveston, for appellants. Stewarts, of Galveston, for appellee.

LANE, J. This suit was instituted by relator, E. B. Kenner, against the city of Galveston, Lewis Fisher, mayor and president of the board of commissioners of said city, and A. P. Norman, W. E. Shay, George Sealy, and H. O. Sappington, constituting the board of commissioners of said city, and for cause of action alleges:

"That Lewis Fisher, A. P. Norman, W. E. Shay, George Sealy, and H. O. Sappington are now, and have been continuously since about the month of May, 1913, mayor-president and commissioners, respectively, of the city of Galveston, duly elected, qualified, and acting as such, and as such constituting the board of commissioners of said city as provided by law, which said board of commissioners constitute the said municipal government of the said city of Galveston, and are charged with the control and supervision over the city and all its departments, including the department of waterworks of the city of Galveston.

"That at all of the times herein mentioned the said board of commissioners maintained the only system of waterworks in the city of Galveston for the purpose of supplying the residents of said city with water for domestic and commercial uses, and that it has laid and is maintaining water pipes and water mains in the public streets of said city for such purposes.

"That this relator is the owner and in possession of certain lot of land with buildings thereon located and set upon lots Nos. 8 and 9 in block 505 in the city and county of Galveston, which lot of ground is improved with a building placed thereon for rental purposes, the lower front of such building being divided into four separate and distinct pieces of rental property,

and the upper floor being divided and used for hotel purposes; that each of said four separate and distinct divisions of said building on the lower floor, and the upper floor which is used as hotel property is leased by this relator each to a separate and distinct tenant, which tenants each respectively operate the premises occupied by them separately and distinctly from each of the other tenants.

"That the city of Galveston owns and maintains water mains, through which water is supplied to the inhabitants of the city, one of which said mains is contiguous to the property of the relator aforesaid; that water from said mains is at present supplied to the building aforesaid through one main pipe connected with one meter, which meter is used for measuring water for the entire building of this relator, and each and all of the tenants of the leased premises therein.

"That this relator has demanded of the respondents herein that they provide to each of the separate and distinct leased premises and the tenants thereof water connection and service direct with the main of the waterworks operated by respondents, and that a meter be attached to each of such separate and distinct direct connections, and the respondents have wrongfully and unlawfully refused to furnish to this relator and to his respective tenants for use in said building such meters and connections with said water mains; that relator has offered to pay all costs, charges and expenses of installing such separate connections and meters.

"That it is necessary to the proper use and enjoyment by this relator of his property and building aforesaid that such direct connection and separate mains be furnished by the respondents to each of the separate and distinct apartments of leased premises hereinbefore referred to for the reason that it is utterly impossible for this relator to apportion with any degree of accuracy among the tenants in such building their proportion of the water used under the present plan, which provides but one meter for the entire building, and further prevents this relator from cutting off from any one of such tenants the water aforesaid through said main without at the same time excluding from the use of said water other tenants in such building.

"That the water system maintained by the respondents herein is the only source of supply available to this relator, and he has no adequate remedy by which to obtain a supply of water for his premises, except by a writ of mandamus to require and compel the respondents to grant his request for the direct connection in separate meters for each of the apartments aforesaid, as hereinbefore set forth. Separate service of meters and connections is furnished different tenants in one building in various instances, and failure to furnish same to petitioner and his tenants is a discrimination against petitioner and his tenants.

"Wherefore this relator prays that said respondents be cited to answer this petition and that he have judgment against them and each of them, compelling and requiring them and each of them to grant the application of this relator for such direct connection with the water mains, a separate meter for each of the apartments and leased premises aforesaid, and to furnish water through such direct connection and said meters to this relator and tenants of this relator in the building aforesaid; that the respondents and each of them be cited to show the cause why a peremptory writ of mandamus be not issued requiring respondents and each of them to grant the application of the relator herein."

Respondent answered by special exceptions, alleging substantially:

"That it appears from the petition that the building is already supplied with water in each and every part thereof; that the petition does

not show that the action of the defendant is unreasonable or discriminating; that the petition fails to allege that any tenants of the premises described in said pettiion have ever applied for a water service to the defendants or to the city of Galveston. Respondent further answered that by its charter it was expressly authorized to provide, construct, establish, maintain, operate, and regulate in the city of Galveston a system of waterworks and * * * to adopt rules and regulations for the management of the waterworks .and to make and establish a schedule of water and sewer rates or both and prescribe the mode and manner of construction of the service pipes, alley laterals, and house connections with the water and sewer mains, * * * and that in pursuance thereof the board of commissioners of the city of Galveston have by ordinances made and adopted rules and regulations prescribing the mode and manner of making street and alley connections with water mains in the city of Galveston, and by said ordinance have provided that, if a house or building is occupied by several tenants, the connection shall be made and the water service furnished only upon the application of the owner thereof, who shall pay for all the water furnished and supplied to each house or building, and in no case shall more than one service line and meter be installed in any . one house or building; that said ordinance is necessary for the proper conduct of the business of supplying water to the inhabitants of the city of Galveston, and is reasonable in its terms and conditions, and that it applies alike to all persons similarly situated, and that the petitioner is not discriminated against in any manner, shape, or form; that long before the institution of this suit the plaintiff had made application for the installation of a water service to said building, and that said application was granted and said service installed, and since that date the city of Galveston has continued to furnish water to the occupants of the building described in plaintiff's petition.

"That it appears from the petition that the sole reason for the application for separate and distinct meters for the various tenants is for the sole convenience of the relator, and would work a great hardship and additional expense upon the city of Galveston and would be granting to the relator special privileges not enjoyed by other persons similarly situated."

The case was tried on the 1st day of February, 1916, and judgment was entered in favor of relator, directing that a writ of mandamus issue requiring defendants to supply a connection with the waterworks of the city of Galveston and a separate meter for each connection to the several portions of the premises.

[1] By appellants' first and second assignments it is insisted that the court erred in overruling appellants' special exceptions to plaintiff's petition: First, because it appears from said petition that the premises of plaintiff are already supplied with water in each and every part thereof; second, because said petition fails to allege that any tenant of any part of said premises has ever applied for a water service to the defendant, the city of Galveston.

The complaint of plaintiff, as set out in his petition, is not that no water is supplied for the premises, but that it is not supplied to the tenants, but to the owner of said premises only, and in a manner and in an effort to compel said owner to pay for all the water used on said premises, and in such an unreasonable manner that said tenants are unable to ascertain how much each of them uses so that each of them may be charged with and pay only for the water used by them, separately. This complaint is specifically set out in the petition. It is also alleged that the owner of said premises has demanded of respondents that they provide to each of the separate and distinct leased premises and the tenants thereof water connection and service direct with the main of the waterworks operated by respondents, and that a meter be attached to each of such separate and distinct connections, and that respondents had refused to make such connections, etc.

It is specially provided by the ordinance of said city pleaded by respondents that, if a house or building is occupied by several tenants, the connection with the water main shall be made and the water service furnished only upon the application of the owner thereof.

We do not think the petition is subject to the exceptions urged to it, and therefore the court did not err in overruling such exceptions.

[2, 3] By the third assignment it is insisted that the court erred in finding as a fact that the tapping of the one meter by which all the water furnished to the entire building in question must be measured, already in use, would not afford the relief desired, because the court further finds that plaintiff's tenants all agree to pay pro rata of the water used. The contention under said assignment is that under such connection as shown the water used by each tenant could be accurately prorated among said tenants in accordance with the amounts used by each of them by tapping the one meter already in use and installing a separate meter in each tenement, and that plaintiff himself could make such installment, and therefore respondents should not be required to install the separate meters demanded by plaintiff. Respondents further contend that before granting a mandamus a court should be convinced that no other remedy exists, and that, as the evidence conclusively shows that plaintiff could have tapped the one pipe leading from the water main into his premises, and with the same connect other pipes to carry the water to each separate compartment of said building supplied with meters, he is not entitled to the writ prayed for.

In City Water Co. v. State, 33 S. W. 259 (in which a writ of error was denied, 93 Tex. 681), it was held that a corporation organized to supply a city with water is a quasi public corporation subject to the rules of law applicable to such corporations.

In speaking of waterworks owned by a municipal corporation, in the case of City of Houston v. Lockwood, 144 S. W. 685 (in which a writ of error was denied, 106 Tex. 619), the court said:

"The fact that the waterworks in this instance are owned by a municipal corporation does not change * * * the rule."

It was held in this case that such waterworks were under legal obligation to furnish water to the residents of such municipality who were in need of it.

In Farmer v. Mayor and City Council of Nashville, 127 Tenn. 509, 156 S. W. 189, 45 L. R. A. (N. S.) 240, it is held that water companies must supply water to the inhabitants of the city whose streets it occupies with its mains, but it may adopt reasonable regulations for conducting its business, which are binding upon its patrons, but that when such works are owned by a municipal corporation an ordinance prescribing regulations must be reasonable and adapted to the corporate purposes; that an ordinance enacted by a city authorized to furnish water to its inhabitants requiring all assessments for water consumed to be assessed against the owners of the property furnished with water, instead of the actual consumers, is unjust, unreasonable, and an arbitrary distinction between the inhabitants so as to be void.

As shown by the undisputed evidence, the city of Galveston owns the only waterworks system in said city for supplying the inhabitants with water, and that its mains are laid in the streets of said city, one of them adjacent to plaintiff's property, and that it had made only one connection with said property and that there are several separate and distinct compartments to said building. It is also shown that the board of commissioners of said city put in force an ordinance by which it is provided, among other things, that if a house or building is occupied by several tenants the water connection shall be made and water service furnished only upon the application of the owner thereof, who shall pay for all the water furnished and supplied to such building, and in no case shall more than one service line and meter be installed in any one building.

The trial court held that such provisions are unreasonable and void. We think such holding of the court is supported by the authorities cited herein, as well as by the great weight of authority. State v. Butte City Water Co., 18 Mont. 199, 44 Pac. 966, 32 L. R. A. 697, 56 Am. St. Rep. 574.

If, then, it was the legal duty of respondents to give plaintiff water connection with its main, as we conclude it was, it was their duty to give such connection as is reasonably necessary to give good and proper service, and such as is usual in such cases, and in such manner as to enable the several consumers to ascertain the amount of water consumed by him, that he may pay for that amount and no more, and the courts should not require the owners of such property to do that which the law requires of respondents.

What has been said disposes of all of appellants' assignments.

Having concluded that the trial court correctly held that such regulatory provisions of the ordinance of said city, as relates to the issues presented by this appeal were unreasonable and void, and that it is a duty imposed by law, upon the respondents, to make the connections demanded by plaintiff, we further conclude that the judgment rendered by the trial court should be affirmed; and it is so ordered.

Affirmed.